# A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
## 42 U.S.C. § 1983

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF LOUISIANA

David Hamilton

108298

Inmate (DOC) number

(Enter above the full name of
each plaintiff in this action.)

VERSUS

Melvin Grooms,
Shannon DeMarrs, Adam Hayes,
(Unknown Barnett, Luke Rheams
Jeff Franklin

(Enter above the full name of
each defendant in this action.)

### Instructions for Filing Complaint by Prisoners
### Under the Civil Rights Act, 42 U.S.C. §1983.

This packet includes two copies of a complaint form and one copy of the pauper affidavit.

**IF YOU ARE A PARISH PRISONER**, you must file an original and one copy of your complaint for each defendant you name. For example, if you name two defendants, you must file the original and two copies of the complaint. You should also keep an additional copy of the complaint for your own records.

**IF YOU ARE A D.O.C. PRISONER**, you must file an original and one copy of your complaint. If the defendants are still employed by the Department of Corrections, only one service copy is needed. Otherwise, you must supply a copy of the complaint and the service address for <u>each</u> defendant no longer employed by the Department of Corrections.

<u>All copies of the complaint must be identical to the original.</u>

The names of <u>all parties</u> must be listed in the caption and in part III of the complaint <u>exactly</u>

the same.

In order for this complaint to be filed, it must be accompanied by the filing fee of $ 350.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants.

If you are unable to pay the filing fee and service costs for this action, you may petition the court to proceed in forma pauperis. For this purpose, a pauper affidavit is included in this packet. You must sign the affidavit, and obtain the signature of an authorized officer certifying the amount of money in your inmate account. If pauper status is granted, you will be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to forward monthly payments from your inmate account until the entire filing fee is paid.

You will note that you are required to give facts. **THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, DO NOT INCLUDE EXHIBITS.**

When you have completed these forms, mail the original and copies to the Clerk of the United States District Court for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I.      Previous Lawsuits

A.      Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?     Yes ( ) No ( X )

B.      If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit
   Plaintiff(s): _____

   _____

   Defendant(s): _____

   _____

2. Court (if federal court, name the district; if state court, name the parish):

   _____

3. Docket number: _____

2.

4.  Name of judge to whom case was assigned: _____

5.  Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?):
_____

6.  Date of filing lawsuit: _____

7.  Date of disposition: _____

C.  Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?       Yes ( )    No ( X )

If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought.
_____
_____

II.  Place of present confinement: _____

A.  Is there a prisoner grievance procedure in this institution?  Yes (✓) No ( )

B.  Did you present the facts relating to your complaint in the state prisoner grievance procedure?
        Yes (✓) No ( )

C.  If your answer is YES:

1.  Identify the administrative grievance procedure number (s) in which the claims raised in this complaint were addressed. _____
No Filed Administration Remendy. LSP No, 2019 - 0903

2.  What steps did you take?  Filed Administration Remedies,
_____

3.  What was the result?  No response
_____

D.  If your answer is NO, explain why not: _____
_____

3.

**III.    Parties**

(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiff(s) _David Hamilton # 108298_
   Address _General Delivery, Angola, La 70712, Louisiana State Prison_

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.

B. Defendant _Melvin Groom_ is employed as
   _Master Sergeant_ at _Louisiana State Prison_

C. Additional Defendants: _Shannon Demarrs, Assistant Warden_
   _Adam Hayes, Lieutenant Colonel, (unknown Barnett, social_
   _Worker, Luke Rheams, Colonel, Jeff Franklin, Major_

**IV.    Statement of Claim**

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. **Do not given any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

4.

## V.    Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. Attach no exhibits. _____

_____

_____

_____

## VI.    Plaintiff's Declaration

1. I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

2. I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any cost assessed by the Court, which, after payment of the partial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3. I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

Signed this ___16th___ day of __July_____, 20_19_

_____

Signature of plaintiff(s)

5.

COMPLAINT WITH
JURY DEMAND

This is a civil rights action lodged by David Hamilton, a state prisoner seeking compensatory and punitive damages, declaratory and injunctive relief pursuant to 42 U.S.C 1983, alleging the use of unnecessary and wanton infliction of pain, and conspiracy to deliberately cause the use of unnecessary and wanton infliction of pain in violation of the eighth Amendment to the United States constitution

JURISDICTION

This Court has jurisdiction over plaintiff's case of violation of federal constitutional rights pursuant to 42 U.S.C 1331 (1) and 1345

PARTIES

1) Plaintiff David Hamilton was confined at the Louisiana State Prison / Camp C Tiger Unit, 1 Right in administration segregation during the events disclosed in this complaint

2) Defendant Melvin Grooms was employed at the Louisiana State Prison as a master sergeant at Camp C / Tiger Unit, 1 Right, administrative segregation. He is sued in his individual capacity.

1

3) Defendant Shannon De Marrs was employed at the Louisiana State Prison as assistant Warden at Camp C. He is sued in his individual and official capacity.

4) Defendant Adam Hayes was employed at the Louisiana State Prison as a Lieutenant Colonel at Camp C. He is sued in his individual capacity.

5) Defendant (unknown-first name) Barnett was employed at the Louisiana State Prison as a unit's Health Authority/Social worker at Camp C. He is sued in his individual capacity.

6) Defendant Luke Rheams was employed at the Louisiana State Prison as a Colonel at Camp C. He is sued in his individual capacity.

7) Defendant Jeff Franklin was employed at the Louisiana State Prison as a Major at Camp C. He is sued in his individual capacity.

8) All defendants have acted under color of state law at all times relevant to this complaint.

2

<u>FACTS</u>

9) On Febuary 24, 2019, plaintiff was double bunked in administration segregation with inmate Ellis Reed on Tiger 1 right, booth cell

10) At approximately 4:00 pm, defendant Grooms and the orderly materialized by cell to place inmate Reed into full restraints in order to transport him to his quarters.

11) Inmate Reed hurled a liquid substance on defendant Grooms that prompted plaintiff to burst into laughter.

12) After the incident was over, defendant Grooms promised plaintiff that he would get even for laughing, "saying I got some thing for you and that laughter."

13) At approximately 7:30 am on Febuary 25, 2019, plaintiff An inmate Reed had not eatten breakfast and slid the food trays on the floor outside the cell inside the booth.

14) When the inmate orderly approached the cell, a verbal argument erupted between plaintiff and him about plaintiff laughing at the incident between inmate Reed and defendant Grooms.

3

15) The inmate orderly hurled the food from the two trays at plaintiff that prompted plaintiff to spit on him, that made him retreat with the two empty food trays in his hands.

16) The inmate orderly retreated up the tier and alerted defendant Grooms, who was located inside the lobby area, that plaintiff had slung human waste on him.

17) Defendant Grooms activated his security beeper from the lobby area.

18) Defendant Hayes and two supervisors arrived on the scene by plaintiff's cell

19) Defendant Hayes accused plaintiff of throwing human waste on the inmate orderly.

20) Plaintiff denied the allegation, pointed to the breakfast of oatmeal and pancakes and syrup dispersed over the floor and outside the cell bars and informed defendant Hayes that the orderly had slung the breakfast at plaintiff.

21) Defendant Hayes told plaintiff, "stop lying, sergeant Grooms observed you throw shit on that man." Defendant Hayes then departed

4

22) Fifteen to twenty minutes later, the two Supervisors returned to inform plaintiff that defendant Demarrs, Hayes and Rheams ordered them to place plaintiff on four point for throwing human waste on the orderly.

23) Without resistance from plaintiff, at approximately 8:06 am, the two Supervisors provided plaintiff with a paper suicide gown and mattress, then shackled plaintiff's ankles and wrists to the bed inside the booth cell

24) Defendant Demarrs and Rheams materialized by plaintiff's cell where plaintiff told them that the orderly and defendant Grooms were lying about the incident and implored the defendants to go view the camera.

25) Defendant Demarrs explained that he and defendant Rheams, and Hayes viewed the recording and support defendant Grooms' observation of plaintiff throwing human waste on the plaintiff.

26) Plaintiff informed defendant Demarrs and Rheams that defendant Grooms had it out for plaintiff for laughing at him when inmate Reed threw something on him.

27) Defendant Rheams told plaintiff that plaintiff was going to be on four point for an indefinite period

5

28) Plaintiff requested to be examined by the social worker and a medical technician because plaintiff had no mental issues of harming himself, others, or security and plaintiff's left arm could not bend or extend out completely because of the plates and screws equipped on the elbow and bones.

29) Defendant Rheams told plaintiff that he was the social worker.

30) Defendant Demarrs proclaimed himself to be the EMT.

31) While on four point, the supervisor had removed the restraints for plaintiff to eat lunch and dinner, stretch, and use the tiolet.

32) Prior to shift change at 4:30 pm, the supervisor had reattached plaintiff to four point

33) At approximately 12:00 am, the night shift supervisor unfastened plaintiff's restraints for a tiolet use an stretch.

34) Plaintiff's back, neck, and left arm begun to hurt with muscular pain

35) From plaintiff being on four point, plaintiff had to sleep in a twisted position on his right side that caused excuriating pain in his left elbow and arm.

36) On Febuary 26, 2019, approximately 6:30 am, while the Supervisor entered the cell to examine plaintiff, plaintiff requested to be examined by the EMT for the muscular pain and stiffness in his back, neck, and excuriating pain in his left arm.

37) Plaintiff informed the EMT of the multiple plates and screws implanted in plaintiff's left arm, and being in excruciating pain.

38) The EMT prescribed plaintiff pain medication for the pain in plaintiff's back, neck, and left arm.

39) At around 7:30 am, the supervisor unfastened plaintiff from four point to eat breakfast, stretch, and tiolet use.

40) While up on break, it was difficult for plaintiff to walk and stretch without the jolting pain in his back, neck, legs and left arm.

41) When the supervisor strapped plaintiff back on four point, defendant Barnett was making rounds. Plaintiff told

7

defendant Barnett that plaintiff did not have a mental issue to be a threat to himself, others, or security and that plaintiff had a physical condition of plates and screws in the left arm, pain inside plaintiff left arm, back, legs, and neck for being on four point for excessive periods.

42) Defendant Barnett advised plaintiff to plea with security and then departed

43) At approximately 9:00 am, defendant Franklin materialized, and plaintiff informed defendant that plaintiff had been on four point pass twenty four hours and was suffering from the pain in plaintiff's left arm, legs, back, and neck.

44) Defendant Franklin replied, " the book said you just got your ass on four point. You ain't coming up until we let your ass up."

45) At 11:00 am, the supervisor unclamped plaintiff to eat lunch and while plaintiff was up off four point, it was difficult for plaintiff to walk without the jolting of pain in plaintiff's legs, back, neck, and left arm.

46) plaintiff declared a medical emergency for chest pains and was examined by two Emergency Medical Technicians.

47) The Supervisor allowed plaintiff to walk and stretch out the soreness in plaintiff's back, legs, neck, chest, and left arm.

48) The Supervisor latched plaintiff back on four point to writhe in muscular pain.

49) Finally, the Supervisor received authorization to release plaintiff off of four point at approximately 3:45 pm.

50) While plaintiff was up off four point, plaintiff was afflickled with muscular pain in back, neck, legs, and left arm

51) On Febuary 27 2019, plaintiff fill out a regular sick call form relating the medical complaint about the muscular pain in back, neck, legs, and left arm

52) The EMS prescribed plaintiff pain medication.

53) On Febuary 27 2019, plaintiff was summoned to disciplinary court to learn that defendant Grooms had fabricated a disciplinary report of a rule 11 for aggrevated fighting proclaiming that he observed plaintiff throw human waste on the orderly.

9

54) The disciplinary board which included defendant Hayes announced plaintiff guilty based upon the contents of the disciplinary report.

**CAMERAS**

55) There are cameras mounted on the booth tier and inside the lobby areas

56) The camera mounted on the tier captured the orderly retreating out of plaintiff's booth cell with two empty food trays in each hands.

57) The cameras mounted in the lobby areas captured defendant Grooms' location inside the lobby during the incident when the orderly alerted defendant Grooms of the altercation and when defendant alarmed his security beeper.

58) The camera on the tier divulged defendant Hayes and the two supervisors examining the dispersion of the food on the cell bars, and floor

59) The camera on the tier and inside the booth cell disclosed plaintiff being excorted by the two supervisors to the cell #3 and placed in a paper gown and fastened on four point.

60) The cameras inside the lobby area and on the tier delineated defendants Demarrs and Rheams confronting plaintiff by the cell while on four point.

60) The cameras inside the lobby area and on the tier evinced defendant Franklin makeing rounds on the tier and plaintiff confronting defendant Franklin about being released off of four point.

61) The camera mounted inside the cell divulged plaintiff being restrained on four point on Febuary 26, 2019 at 8:06 up til febuary 27, 2019 at 3:45 pm

POLICY

62) There is a use of force policy. Department Regulation No. C-02-006 that specified the procedures prior to being placed on four point, while on four point, and after being released off of four point.

63) Prior to being placed on four point, no Health Authority examined plaintiff for any medical / mental health evaluation

64) While plaintiff was on four point, no Health Authority examined plaintiff for any medical / mental health evaluation

65) When plaintiff was released from four point on Febuary 27, 2019 after thirty two hours, plaintiff was not examined by a qualified medical personel.

11

66) The policy prohibits four point to be used as a method of punishment.

67) The policy prohibits plaintiff to be on four point excessively

68) Plaintiff did not receive a disciplinary report for any misconduct while on four point for an excessive period.

69) plaintiff did not attack any of the Supervisors while being placed on four point or whenever plaintiff was released for breaks by the Supervisors.

70) plaintiff did not pose a threat to security, initially, prior to being placed on four point or while on four point.

## ADMINISTRATION REMENDY

71) On Febuary 29, 2019, plaintiff filed an administration Remendy.'

72) After the Legal Program Director did not provide notice, plaintiff filed a second Administration Remendy on April 1. 2019.

73) The Legal Program Director rejected the complaint on the fortitude that the incident was already addressed and will not be addressed again under

12

Case number 2019-0903

74) Plaintiff lodged another administrative Remendy on May 12, 2019, complainting about the legal program Director's failure to process the complaints.

75) On June 4, 2019, the Legal Director rejected the Complaint against her in Case number LSP 2019-1050

76) On June 10, 2019, plaintiff submitted letters to the legal program Dep't Director and the Warden's office inquiring about the complaints.

77) On June 24. 2019. plaintiff submitted letters to the Warden's office complainting about the lack of responses to plaintiff's complaints and letters.

78) on July 10, 2019, plaintiff submitted letters to the Warden's office and legal program Dep't's Director to address plaintiff complaint

79) Plaintiff do have any pending administration Remendies

13

## DISCIPLINARY APPEAL

80) Plaintiff appealed the disciplinary report and sanctions under LSP case number #

## CLAIM

81) Defendant Grooms' fabricated a disciplinary report to have plaintiff fastened on four point for an excessive amount of time was a deliberate intent to cause the unnecessary and wanton infliction of pain that constituted cruel and unusual punishment in violation of the eighth amendment

82) Defendant Demarrs authorization to place plaintiff on four point by knowing that the incident was fabricated by defendant Grooms was a deliberate intent to have plaintiff punished on four point for an excessive period was to cause unnecessary and wanton infliction of pain to plaintiff's legs, left arm, back, and neck constituted cruel and unusual punishment in violation of the eighth amendment

83) Defendant Demarrs' violation of the four point restraints policy by deliberately depriving plaintiff to be examined by the Unit's Health Authority for medical/mental health contraidiction was a deliberate intent to cause unnecessary and wanton infliction of pain to plaintiff's legs, left arm, back, and neck.

14

84) Defendant Demarrs' authorization to place plaintiff on four point for an excessive period of thirty two hours was without legitimate provocation or justification but was deliberately done to cause harm to plaintiff that constituted the use of unnecessary force in violation of the eighth amendment

85) Defendant Barnett's failure to examine plaintiff for mental/medical health contraidiction prior to the authorization of plaintiff being placed on four point and while plaintiff was on four point was deliberately done to cause harm to plaintiff that constituted the use of unnecessary force of maintaining plaintiff on four point for thirty two and a half hours in violation of the eighth amendment

86) For plaintiff to have been on four point for thirty two and a half hours that caused excruciating pain in plaintiff's left arm, legs, back, and neck was done deliberately without legitimate provocation or justication constituted the use of unnecessary force in violation of the eighth amendment.

87) When plaintiff informed defendants Demarrs, Barnett, Rheams, and Franklin of the limited use of plaintiff's left arm should have decommitted plaintiff to four point restraints for thirty two and a half hours while in excruciating pain in plaintiff's left arm, legs, back, and neck was the use of unnecessary force in violation

15

of the eighth amendment

88) When defendant Franklin deliberately allowed plaintiff to remain on four point after plaintiff informed him of being on four point pass twenty four hours in pain in plaintiff's left arm, legs, back, and neck was the continuing use of unnecessary force that was applied wantonly and indifferently in violation of the eighth amendment

89) Defendants Demarrs, Rheams, Hayes, Barnett, and Franklin conspired with defendant Grooms to place plaintiff on four point for an excessive period to punish plaintiff with unnecessary and wanton infliction of pain when defendant Grooms fabricated a disciplinary report of the incident was a conspiracy to violate plaintiff's eighth amendment

90) When Defendant Demarrs authorized the use of four point restraints on plaintiff and deliberately deprived plaintiff on a mental/medical health evaluation was conspired with defendant Barnett, Rheams, Hayes, and Grooms to punish plaintiff with unnecessary and wanton infliction of pain was a conspiracy to violated plaintiff's eighth amendment

91) When Defendant Demarrs, Hayes, and Rheams deliberately refused to view the video recording of the disturbance that would have supported plaintiff's

16

denial of throwing human waste on the orderly in the presence of defendant Grooms was a Conspiracy to punish plaintiff with unnecessary and wanton infliction of pain on four point for an excessive period in violation of the eigth amendment

92) That defendants Demarrs, Rheams, Hayes, Barnett, Grooms, and Franklin conspired to have plaintiff Confined to four point for an excessive period of thirty two hours and a half was a Conspiracy to violate the eigtith amendment

## <u>RELIEF REQUESTED</u>

A) Issue a declaratory Judgment stating that:

1) defendant Grooms' fabricated disciplinary report of observing plaintiff throw human waste on the orderly was not a legitimate disturbance for defendant Demarrs to have Committed plaintiff to four point

2) defendant Groom's fabricated disciplinary report was written up deliberately to intentionally cause harm to plaintiff being subjected to four point for an excessive period of thirty two and half hours.

3) That defendant Demarrs, Rheams, Hayes Could have Keenly viewed the video recording and determined that defendant Grooms had reported a lie of being on the scene of the incident to have observed

17

plaintiff throw human waste on the orderly would have not subjected plaintiff to four point

4) That plaintiff should not have been clamped on four point for an excessive period of thirty two hours in absence of a legitimate disturbance.

5) That defendant Franklin should have readily and immediately released from four point after twenty four hours while plaintiff was in pain

6) That defendant Grooms, Demarrs, Rheams, Hayes, and Franklin conspired to punish plaintiff with four point of being clamped down for an excessive period of thirty two and half hours.

B. Issue an injunctive relief ordering the Warden to :

1) Issue each defendant with a VR-1 (disciplinary report in adherance to the employees rule violation for General Misconduct and recommend a demotion of each defendant supervisory status and suspension without pay that do not exceed a hundred seventy six hours.

C) Award compensatory damages in the following amount:

18

1) $50.000 against defendant Grooms for falsifying a disciplinary report that subjected plaintiff to suffer excruciating pain in left arm, legs, back, and neck while on four point for an excessive period of thirty two and half hours.

2) $50,000 jointly and severally against defendants Demarrs, Rheams, Barnett, and Hayes for subjecting plaintiff to suffer excruciating pain in left arm, legs, back, and neck while on four point for an excessive period of thirty two and half hours in the absence of a legitimate disturbance.

3) $50.000 against defendant Franklin for refusing to unfasten plaintiff off four point after twenty four hours of writheing in excruciating pain in left arm, legs, back, and neck

4) $50.000 jointly and severally against defendants Grooms, Demarrs, Rheams, Hayes, Barnett, and Franklin for conspiring to punish plaintiff with four point restraints for an excessive period of thirty two and half hours to cause pain to plaintiff

D) Award punitive damages in the following amount:

1) $50.000 against each defendant

2) 1.000 for each hours plaintiff was fastened on four point without a legitimate provocation or justification.

19

E) Grant such other relief as it may appear that plaintiff is entitled to.

David Hamilton
#108298
General Delivery
La. State Prison
Angola, La 70712